IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James Harold Lawson, Jr.,            :
                Plaintiff            :     Civil Action 2:12-cv-00533

      v.                               :     Judge Smith

Jessica McQuate and Dino Cardaras,   :     Magistrate Judge Abel
             Defendants
                                 :

**Report and Recommendation**

This matter is before the Magistrate Judge on defendants Jessica McQuate's and Dino Cardaras' November 13, 2013 motion for summary judgment (doc. 50).

**I.    Allegations in the Complaint**

The complaint alleges that on July 21, 2010 plaintiff James H. Lawson, Jr. was seen by defendant nurse Dino Cardaras for complaints of a headache, dizziness, fever and tightness in his chest. Cardaras dismissed the large reddish spot/mark on Lawson's left leg as heat rash. He did not take Lawson's temperature because there were no probe covers, but Cardaras nonetheless recorded his temperature in his notes. Before leaving the medical office, Lawson asked to see a doctor. That request was denied. Complaint, ¶¶ 5-6. It is the "Culture of Care" at the Chillicothe Correctional Institution ("CCI")  to deny medical care to inmates. *Id.*, Complaint, ¶ 7.

Within 24 hours, Lawson was admitted to the Ohio State University Medical Center, where he was placed in the infectious disease unit and given antibiotics. When

he returned to the Chillicothe Correctional Institution on July 27, he was to continue taking the prescribed antibiotics. But when he arrived at the prison, no steps were taken to insure that he received the prescribed medication. Complaint, ¶¶ 2 and 7. Instead, defendant nurse Jessica McQuate cleared Lawson for return to the general population, where he did not receive the antibiotics. Complaint, ¶¶ 2-3. Lawson then experienced increased pain and swelling in his left foot. His request for crutches was denied. McQuate and Cardaras made no effort to assess or inquire into why Lawson needed crutches. Lawson was returned to the Ohio State University Medical Center. Complaint, ¶ 3.

## II.  Arguments of the Parties

### A.  Defendants

To state a claim for relief for a violation of his Eighth Amendment right, plaintiff must allege acts or omissions sufficiently harmful to show deliberate indifference to serious medical needs. Deliberate indifference to serious medical needs is the unnecessary and wanton infliction of pain. Defendants argue that a prisoner's complaints about the quality of his medical care does not state a valid claim for an Eighth Amendment violation even if the treatment amounts to medical malpractice. Medical malpractice does not become a constitutional violation simply because the victim is a prisoner.

Defendants concede that plaintiff's condition of cellulitis was serious. Defendant Cardaras maintains, however, that at the time he treated Lawson on July 22, 2010, the

2

seriousness of the condition was not so obvious that a layperson would have recognized the need for treatment. Cardaras relies on his July 22, 2010 notes, which indicate that Lawson had complained of a headache and dizziness since it had gotten hot that day. Cardaras recorded Lawson's vital signs as normal. He did not show swelling or redness on his left lower leg where the cellulitis subsequently exhibited itself after Cardaras examined Lawson. Cardaras also contends that the OSU medical records from July 23 through July 27 do not show that the failure of Cardaras to detect cellulitis on July 22 led to the worsening of his condition. Defendants also argue that there is no evidence that Cardaras was subjectively aware of Lawson's need for immediate treatment and that he ignored that need. Lawson's symptoms of swelling and redness did not appear until after Cardaras's examination. At most, Lawson's complaints that Cardaras should have know that he was suffering from cellulitis on July 22 only amounts to an allegation of negligence.

Defendants further argue that there is no evidence to prove Lawson's allegation that Cardaras ignored plaintiff's need for antibiotics at the July 27 evening pill call. Cardaras denies having any knowledge that Lawson need Keflex or that he was having difficulty walking. Although Lawson claims that Cardaras was aware that Officer Deck had to intervene to retrieve crutches for Lawson while Cardaras smiled and laughed at Officer Deck's persistence, Officer Deck has no recollections of the events that Lawson describes.

Defendants further argue that Lawson cannot point to any failure on the part of Nurse McQuate that would  show deliberate indifference to plaintiff's serious medical need. On July 27, 2010, McQuate examined plaintiff and assessed his vital signs upon his return to CCI. McQuate found that Lawson's condition was stable, just as OSU concluded when Lawson was discharged. Lawson has no evidence that McQuate's assessment of him had a detrimental effect in worsening his condition. Defendants concede that there is some evidence to doubt that the failure to administer Keflex within the roughly eight-hour period in which Lawson was back at CCI was the precise cause of Lawson's relapse of cellulitis. The normal practice at CCI upon receiving a patient discharged from a hospital is that unless the discharge instructions specify that the medication is needed immediately, the patient will receive it the following day. Lawson received IV antibiotics on the morning he was discharged from OSU as well as for several days prior. According to OSU records, it appears that Lawson was originally scheduled for a dose of the antibiotic at 2:00 p.m. and 10:00 p.m. on the day of his discharge. But, plaintiff did not received any antibiotics following his 6:00 a.m. dose even though he was still at OSU at 2:00 p.m. The discharge instructions McQuate received did not indicate a time or date when administration of oral antibiotics should commence.

Dr. William Maher, Lawson's attending physician at OSU during the second hospitalization, noted that Lawson went without antibiotic treatment for twelve hours and had walked on his infected leg at CCI. He attributed plaintiff's relapse to an

4

"interruption of treatment" and slightly premature transition to oral therapy." Lawson is required to provide verifying medical evidence to confirm that missing his antibiotic medication for the eight hours that he was at CCI posed a substantial risk in his relapse of cellulitis. Defendants maintains that it is unclear whether the premature transition to oral antibiotics and missing one to two doses of Keflex played a role in his relapse compared to the eight hours he spent at CCI without his medication.

McQuate's actions or inaction on July 27, 2010 could not have had any effect on posing a substantial risk to Lawson's health because the dispensary closed at 5:00 p.m. and Lawson was not examined by McQuate until 5:35 p.m. Defendants maintain that there is no evidence that shows McQuate was subjectively aware that Lawson had an immediate need for his antibiotics to be administered upon his arrival back at CCI on July 27, 2010. Although there was some redness and swelling present on Lawson's lower left leg, McQuate reasonably believed that these were the residual effects of Lawson's prior bout with cellulitis; these findings were also noted in the discharge instructions when Lawson was released that day from OSU.

McQuate released Lawson back to the general population after assessing him. ODRC policy would not have permitted McQuate to admit Lawson into the infirmary under the circumstances present on his return from OSU. McQuate filled out the necessary paperwork to ensure that Lawson would receive his medication. McQuate did not have the authority, as a registered nurse, to prescribe medication to Lawson.

5

McQuate denies plaintiff's allegations with respect to the July 27, 2010 evening pill call.  Lawson does not allege that McQuate handled the pill call or that he communicated to her that he was still missing his antibiotics. Lawson simply alleges that after he received his other medications, he asked Officer Deck for crutches and that McQuate and Cardaras were nearby. Plaintiff argues that because McQuate was aware of his need for crutches, she should have made further inquiry regarding his ailment, but defendants contend that these allegations amount to negligence rather than deliberate indifference.

Defendants further argues that they are entitled to qualified immunity because no constitutional violation occurred. Neither defendant was presented with obvious indications that Lawson was suffering from a severe infection or relapsing, nor were they presented with specific evidence that would have definitely revealed that Lawson required immediate treatment or access to his antibiotic.

### B.    Plaintiff

Lawson argues that Cardaras's assertion that he examined Lawson using the SOAP (subjective, objective, assessment, plan) format shows that Cardaras did not provide the required standard of care. A registered nurse, like Cardaras, is required to employ the nursing process known as A.D.P.I.E., which stands for assessment, diagnosis, plan, intervention, evaluation/re-evaluation.

Lawson also argues that Cardaras' statements are inconsistent with the treatment notes. Cardaras stated that he did not observe any problems with plaintiff's left leg and

6

that plaintiff did not communicate that he was having any problem with his left leg. Lawson maintains that these two statements are contradictory because if he was not complaining of problems with his left leg, then why would there be a need to assess his left leg.

Plaintiff maintains defendants acted outside their professional scope of practice and that the CCI policy is below the community standards and defendants' licensing standards. Plaintiff contends that Cardaras should have taken Lawson's initial complaint and then conducted a head to toe assessment. Cardaras improperly focused on the fact that plaintiff took Lithium. Plaintiff maintains that Cardaras practiced medicine without a license by stating that Lawson had a headache and dizziness and by giving him Tylenol.

With respect to the events of July 27, 2010, plaintiff states that although the error could have originated with OSU, it was more likely the error of the prison transport officers that caused plaintiff to be returned to CCI. Plaintiff maintains that McQuate was negligent in advocating for him because the discharge order clearly stated that he was to be released to an advance care facility for continuation of antibiotics. McQuate failed to note that Lawson received his last dose of antibiotics at 5:25 a.m. and that the new schedule for his medication went from every hours to every six hours.

When Lawson returned to medical for the scheduled pill call, there was no medication available for him other than his psychotropic medications. Lawson went to Officer Deck and to ask about his antibiotics and informed him that he was having

7

trouble walking. Plaintiff maintains that once defendants were aware that he was having trouble walking, they should have acted. Their inaction was the result of deliberate indifference to his serious medical need. The need was so obvious that the corrections officer, a layperson, easily recognized Lawson's need for medical attention.

Plaintiff further argues that the ODRC policy regarding medical treatment and assessment is below the standard of care and reflects a culture that denies adequate medical treatment by beginning with a substandard medical assessment of need. Any mistake on the part of OSU does not excuse McQuate's conduct in failing to take action to ensure that he received the necessary care and treatment for cellulitis.

### III. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## IV.  Discussion

Under the Eighth Amendment,  prison officials are forbidden from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97,

9

104 (1976).  To demonstrate an Eighth Amendment deprivation, a prisoner must show

that a prison official acted with deliberate indifference to his serious medical needs.

*Estelle*, 429 U.S. at 103-04.  Prison officials are liable only if they know of and disregard

"an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists,

and he must draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Mere

negligence does not constitute deliberate indifference.  *See, Estelle*, 429 U.S. at 106.

Further, a prisoner does not state a claim merely by pleading that he disagrees with the

diagnosis or treatment.  *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n.

5 (6th Cir. 1976).

A prison official does not act with deliberate indifference unless the official both

knows of and disregards an excessive risk to inmate safety or health. The official must

be aware of the facts from which she could draw the inference that a substantial risk of

serious harm exist, and she must also draw the inference. *Cairelli v. Vakilian*, 80 Fed.

Appx. 979 (6th Cir. 2003).  "An official's failure to alleviate a significant risk that he

should have perceived but did not, while no cause for commendation, cannot under our

cases be condemned as the infliction of punishment." *Estelle*, 429 U.S. at 838.

The Sixth Circuit requires verifying medical evidence to demonstrate the

deleterious effect of the lack of treatment when only minor maladies or non-obvious

complaints of a serious need for medical care were present. "[A]n inmate who

complains that delay in medical treatment rose to a constitutional violation must place

verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994.  Verifying medical evidence provides the court with the best available evidence as to whether the alleged deprivation is sufficiently serious and whether the inmate was at substantial risk of harm. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments." *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). The burden of proof in such cases is fairly substantial, in that an inmate complaining about his course of treatment, such as receiving one medication instead of another, must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

Defendant Cardaras's July 22, 2010 treatment notes indicates that plaintiff was feeling lightheaded, dizzy and had headaches "since it got hot today." Cardaras recorded plaintiff's blood pressure and body temperature. He conducted an electrocardiogram. Plaintiff's lungs were clear. Normal sounds were present in Lawson's abdomen. Cardaras checked plaintiff's pulses. He noted that plaintiff took Lithium. Cardaras treated plaintiff for his headache with Tylenol. The note does not contain any reference to plaintiff's leg. *See* doc. 50-1 at PageID #271.

On July 23, 2010, defendant McQuate evaluated plaintiff for complaints of chest pains and arrhythmia. She took his vital signs. Streaking was noted on his left leg. Doc. 50-3 at PageID #276. The doctor examined plaintiff and noted a possible infection. The noted also indicated that the "onset occurred last night." Doc. 15-5 at PageID #347. Plaintiff was then transported to OSU. *Id.*

In her declaration, Beth Higginbotham, the Health Care Administrator for CCI, stated that Lawson arrived at CCI around 5:35 p.m. on July 27, 2010, at which time he was examined by Nurse McQuate. Doc. 50-8 at ¶ 9; PageID 299. The evening pill call occurred at 6:30 p.m. Because plaintiff returned after 5:00 p.m., no new orders for prescribed drugs were available at the time of the evening pill call. *Id.* Lawson was taken to OSU at midnight on July 28, 2010 according to the emergency assessment. As a result, plaintiff was only at CCI for seven to eight hours. *Id.* at ¶ 12.

Corrections Office Terry Deck submitted a declaration stating that although he worked second shift at the dispensary on July 27, 2010, he has no recollection of the events as described in plaintiff's complaint. Doc. 50-18 at ¶¶ 2-3; PageID# 350.

Plaintiff has failed to offer any evidence indicating that defendant Cardaras was deliberately indifferent to his serious medical needs. The evidence of record shows that the streaking on plaintiff's leg was not present at the time he examined plaintiff. Plaintiff's argument that Cardaras's care fell short of the standard of care a registered nurse is required to provide is at most a claim that Cardaras acted negligently. Medical

12

malpractice, however, does not rise to a constitutional violation simply because plaintiff is incarcerated.

There is also no evidence that defendant McQuate was deliberately indifferent to plaintiff's serious medical needs. Plaintiff was examined upon his return to CCI. McQuate completed the paperwork necessary for plaintiff to receive his antibiotic. Plaintiff has not offered any evidence to support his allegations that McQuate was aware that delaying his medication to the following day would place him at risk of serious harm. Plaintiff has not offered evidence to support his allegation that defendants were dismissive of Officer Deck when he obtained crutches for plaintiff. Moreover, plaintiff was returned to OSU within hours of his arrival at CCI. Because plaintiff has not produced any evidence from which a trier of fact could conclude that defendants were deliberately indifferent to Lawson's serious medical needs, I recommend that defendants' motion for summary judgment be granted.

## V.     Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants Jessica McQuate and Dino Cardaras' November 13, 2013 motion for summary judgment (doc. 50) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof

in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel       
United States Magistrate Judge

14